# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**GINNY M. STROUD**                                                    **PLAINTIFF**

v.                           No. 1:14–CV–61-BSM–BD

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                   **DEFENDANT**

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for Chief United States District Judge Brian S. Miller. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Miller may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Ginny Marie Stroud seeks judicial review of the denial of her application for supplemental security income (SSI).[3] Ms. Stroud isn't eligible for disability insurance benefits because she has never worked. She claims she cannot work due to bipolar disorder, schizophrenia, depression, migraines, insomnia, chronic back pain, seizures, and tremors.[4] Although she claims disability beginning at age 18, she isn't eligible for SSI before she applied. Therefore, this case considers whether she was disabled beginning on April 16, 2010, when she applied. At that time, she was 21 years old.

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined that Ms. Stroud has severe impairments — schizoaffective disorder, cannabis dependence, post traumatic stress disorder, seizure disorder, and borderline personality disorder[5] — but that she could work at all exertional levels with specified non-exertional limitations.[6] Because a vocational expert

---

[3]SSA record at p. 121 (applying for SSI on Apr. 19, 2010 and alleging disability beginning May 16, 2007). Ms. Stroud has pursued SSI since she was age 18.

[4]*Id*. at p. 133.

[5]*Id*. at p. 14.

[6]*Id*. at p. 16 (placing the following limitations on the ability to work: (1) simple routine tasks that require reasoning level 1, (2) no interaction with the public and superficial interaction with co-workers, and (3) no exposure to hazards or moving machinery).

identified work meeting the limitations that the ALJ found applicable, the ALJ concluded that Ms. Stroud was not disabled and denied the application.[7]

After the Commissioner's Appeals Council denied a request for review,[8] the ALJ's decision became a final decision for judicial review.[9]  Ms. Stroud filed this case to challenge the ALJ's decision.[10]

In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[11]  This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

---

[7]*Id*. at p. 19.

[8]*Id*. at p. 2.

[9]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[10]Docket entry # 1.

[11]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Ms. Stroud's allegations**. Ms. Stroud challenges the determination that she could work within the ALJ's limitations. She argues that the ALJ "selectively picked medical records to discount [her] complaints and failed to consider the medical evidence as a whole."[12] She maintains that the ALJ ignored the frequency at which her mental symptoms recur and how often her medications require adjustment. She complains about the ALJ's reliance on medical non-compliance. She says the ALJ failed to properly consider her medical provider's opinion. For these reasons, she argues, substantial evidence does not support the ALJ's decision.

**Applicable legal principles**. Substantial evidence exists if a reasonable mind would accept the evidence as adequate to support the decision.[13] In reviewing for substantial evidence, the court must consider the record as a whole.[14] Reviewing for substantial evidence requires more than searching for the existence of substantial evidence.[15] The court must consider all of the evidence—including evidence detracting

---

[12]Docket entry # 13, p. 17.

[13]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[14]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[15]*Scott o/b/o A.S. v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008); *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989).

from the decision[16] — but the court may not reverse simply because substantial evidence supports an opposite conclusion.[17]

**A reasonable mind would accept the evidence as adequate because Ms. Stroud's symptoms could be controlled with treatment.** The ALJ's determination about a claimant's ability to work must be supported by medical evidence; a claimant's subjective allegations are not enough to prove she is disabled.[18] Ms. Stroud presented years of medical evidence — much of it predating the time period for which benefits were denied. Reviewed as a whole, the medical evidence shows that treatment and compliance control Ms. Stroud's symptoms.

---

[16]*Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).

[17]*Slusser*, 557 F.3d at 925; *Sultan*, 368 F.3d at 863.

[18]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

The remote evidence attributes Ms. Stroud's primary mental impairment (schizoaffective disorder) and her physical impairment (seizure disorder) to a history of drug use.[19] The more probative evidence — the evidence generated during the time period for which benefits were denied — makes the same connection.[20] The causal connection between Ms. Stroud's symptoms and drug use is important to her claim because a claimant cannot receive SSI if substance abuse contributes to her disability.[21]

The bigger problem with Ms. Stroud's claim is that the medical evidence shows that her symptoms improve with treatment. The improvement is important because an impairment "which can be controlled by treatment or medication is not considered

---

[19]SSA record at p. 283 (Dec. 4, 2006: diagnosing substance abuse induced mood disorder persistent, substance abuse induced psychosis persistent, primary stimulant abuse, defiant [sic] disorder, rule out conduct disorder and cognitive disorder due to substance abuse; current visual hallucinations are consistent with methamphetamine use) & p. 349 (Aug 10, 2009: reporting that drugs most likely caused her seizures and hallucinations).

[20]*Id*. at p. 404 (Aug. 17, 2010: reporting a seizure disorder that began at age 16 after a long history of methamphetamine abuse), p. 418 (Oct. 6, 2010: her hallucinations and schizophrenia, and development of borderline personality disorder, are coincidental to meth use), p. 446 (Nov. 18, 2010: stating that drugs most likely caused her seizures and hallucinations), p. 512 (Oct. 7, 2011, stating that tolerance and withdrawal symptoms exacerbated her seizure condition as well as psychosis) & p. 521-22 (Dec. 8, 2012: hospitalization for overdose following two-to-three-day binge involving methamphetamine, cocaine and cannabis).

[21]*See* 42 U.S.C. § 423(d)(2)(C) (eliminating substance abuse as a basis for disability benefits); *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010).

disabling."[22]  Ms. Stroud improves when she takes prescribed medications and abstains from drug use.[23]

**Ms. Stroud does not comply with all prescribed treatment**.  A claimant must comply with prescribed treatment if treatment can restore her ability to work; a claimant who fails to comply with prescribed treatment without good reason is barred

---

[22]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[23]SSA record at p. 298 (Mar. 15, 2007: mother reports that patient is 99% better since she has been actively taking her medications; the patient wants to get off medication but she provided no valid reason except that she is tired of taking pills; "she does verbalize that the pills have made her life more bearable and easy to live with"; she used marijuana last night); p. 306 (June 19, 2007: she reported a stable mood and occasional visual hallucinations; depression and anxiety well-controlled); p. 304 (June 27, 2007: she misplaced her medications for two days and felt very bad; she reported hallucinations off medications); p. 310 (Sept. 7, 2007: recent medication changes helped depression and anxiety; two seizures since last visit but they were are not as bad as before); p. 217 (May 8, 2008: no depression; making good progress but unwilling to address cannabis dependence); p. 339 (Feb 5, 2009: recently hospitalized for nine days; she says it was a good experience; she has a more stable mood and less frustration; this is the best she has been in quite some time; she's responding well to medications with some side effects); p. 347 (Aug. 11, 2009: mood swings are much better since beginning of the year; boyfriend is her main stressor; smokes marijuana occasionally to relax; she's not seeing a neurologist because Depakote seems to maintain her seizures; Depakote has helped control major mood swings as well as seizures); p. 370 (Feb. 9, 2010: psychotic symptoms have resolved but mood instability continues); p. 366 (Apr. 13, 2010: mood is still irritable with occasional mood swings; anxiety fairly well maintained; auditory hallucinations well maintained; psychotic symptoms have resolved but mood instability continues).

from receiving SSI.[24] Failing to follow a recommended course of treatment also weighs against a claimant's credibility.[25]

For the most part, Ms. Stroud took her prescribed medications, but she continued to use marijuana[26] and declined psychotherapy.[27] Ms. Stroud claims that the ALJ cited to "a single note of noncompliance,"[28] but the record contains numerous instances of noncompliance. She also argues that the ALJ ignored the frequency at which her mental

---

[24]20 C.F.R. § 416.930 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

[25]*Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005).

[26]*See* SSA record, *e.g.*, at p. 302 (Jan. 31, 2007: "I had a lengthy discussion with the patient regarding [how] use of drugs could lead to decompensation of her symptoms and probably end up in hospitalization. She understands the negative effects of drug use…."), pp. 250 (Oct. 29, 2007: having auditory hallucinations; she's using marijuana daily), p. 271 (Jan. 10, 2008: using marijuana three times per week); p. 341 (June 11, 2009: still using marijuana); p. 370 (Feb. 9, 2010: abstain from using marijuana) & p. 368 (Mar. 9, 2010: abstain from marijuana).

[27]*See id, e.g.,* at p. 220 (Apr. 14, 2008: she isn't attending psychosocial rehabilitation; the house smelled like marijuana; she's making excuses not to attend), p. 211 (June 10, 2008: she hasn't been attending psychosocial rehabilitation; she states she is busy and does not feel like going), p. 447 (Sept. 2, 2011: she complained vaguely about feeling angry and agitated, but she didn't follow recommendations about medication; strongly recommend counseling, but she is apathetic and resistant to therapeutic recommendations such as individual counseling), p. 499 (Apr. 6, 2012: she hasn't followed through with the referral for psychosocial rehabilitation), p. 497 (May 17, 2012: she hasn't followed through with the referral for psychosocial rehabilitation) & p. 491 (Nov. 8, 2012: she hasn't done any of the requested actions such as go to psychosocial rehabilitation; she talks about a lot of things that she cannot do but does not give any reasons why).

[28]Docket entry # 13, p. 18.

symptoms recur and how often her medications require adjustment, but medication adjustments do control her symptoms. Neither complaint provides a basis for relief.

Ms. Stroud's reliance on her long-time medical provider's medical source statement[29] provides no basis for relief because the ALJ considered the provider's statement and his treatment notes. Although the provider — a psychiatric nurse practitioner — isn't an acceptable medical source under the Commissioner's regulations, the ALJ adopted the supported limitations. For example, according to the provider, Ms. Stroud is seriously limited, but not precluded, from doing unskilled work involving short, simple instructions, and in responding to changes in work routine.[30] The ALJ responded by requiring tasks requiring reasoning level 1.[31] Reasoning level 1 requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."[32] Thus, the work restrictions included in the ALJ determination addressed Ms. Stroud's limitations. According to the medical provider, Ms. Stroud was seriously limited, but not precluded, from working

---

[29]SSA record at p. 577.

[30]Id. at p. 579.

[31]Id. at p. 16.

[32]Dictionary of Occupational Titles, app. 3, III.

with co-workers and accepting criticism from supervisors,[33] and was unable to deal with the public.[34] The ALJ responded by requiring no interaction with the public and superficial contact with co-workers.

As for other reported limitations, the medical provider's treatment notes show that Ms. Stroud's symptoms improved with treatment, but that she did not comply with all medical recommendations. The medical provider suggested that Ms. Stroud's illnesses would be debilitating even if Ms. Stroud abstained from substance abuse, but it logically follows that a provider prescribes treatment that will improve his patient's symptoms and that Ms. Stroud would improve by following all medical recommendations. Ms. Stroud's failure to follow medical recommendations undermines the provider's opinion. The ALJ gave the provider's opinion appropriate weight.

## Conclusion and Recommendation

Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Ms. Stroud's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

---

[33]SSA record at p. 579.

[34]*Id*. at p. 580.

Dated this 19th day of March, 2015.

                                                                                           _____
                                                                                UNITED STATES MAGISTRATE JUDGE